Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorney for Defendant Central Research, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
*San Jose Division*

MADISON MELENUDO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CENTRAL RESEARCH, INC.,

Defendant.

Case No. 5:26-cv-03340-BLF

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; INCORPORATED REQUEST FOR JUDICIAL NOTICE**

Judge: Hon. Beth Labson Freeman
Hearing Date: December 3, 2026
Hearing Time: 9:00 AM
Courtroom: 1 – 5th Floor

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... iii

NOTICE OF MOTION .......... 1

INTRODUCTION .......... 2

REQUEST FOR JUDICIAL NOTICE .......... 3

MEMORANDUM OF POINTS AND AUTHORITIES .......... 6

I. STATEMENT OF THE ISSUES TO BE DECIDED .......... 6

II. RELEVANT FACTUAL BACKGROUND AND ALLEGATIONS .......... 6

III. LEGAL STANDARD .......... 10

IV. ARGUMENT .......... 10

A. Each of Plaintiff's claims fail because she was required to provide express, affirmative consent before accessing CRI's online services. .......... 10

B. As a direct contractor of DOE, CRI is entitled to a defense to liability under *Yearsley*. .......... 13

1. CRI [redacted] the explicit directions of DOE. .......... 15

2. The Higher Education Act grants DOE the necessary authority to contract with CRI. .......... 15

C. The "party exception" forecloses Plaintiff's ECPA and CIPA claims. .......... 16

1. The party exception defeats Plaintiff's ECPA claim. .......... 17

2. The party exception also defeats Plaintiff's CIPA claims. .......... 18

D. Plaintiff has not alleged a predicate violation to attach aiding and abetting liability to CRI or "contents" of a communication under Section 631(a). .......... 18

E. Plaintiff fails to state a claim for a violation of CIPA § 632 or invasion of privacy where she lacked a reasonable expectation of privacy in her communications. .......... 20

1. Plaintiff's invasion of privacy claim fails because she did not have a reasonable expectation of privacy. .......... 20

2. Plaintiff cannot establish her communications were "confidential" because she did not have a reasonable expectation of privacy. ................ 21

CONCLUSION ........................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....10

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....16

*Barnes v. Marriott Hotel Servs., Inc.*,
2017 WL 635474 (N.D. Cal. Feb. 16, 2017)....5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....10

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025)....22

*Bratton v. Broomfield*,
2023 WL 4748838 (N.D. Cal. July 25, 2023)....14

*Brodsky v. Apple*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....18

*Brown v. Google, LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....17

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
797 F.3d 720 (9th Cir. 2015)....14, 15

*Caldwell v. Caldwell*,
2006 WL 618511 (N.D. Cal. Mar. 13, 2006)....4

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016), *as revised* (Feb. 9, 2016)....14, 15, 16

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....10, 18

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019)....12

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010)....4

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009)....13, 14, 18, 20

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004) ....................5

*In re Facebook, Inc., Internet Tracking Litig.*,
956 F.3d at 607 ....................16, 18

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....................11

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................11

*Geo Group, Inc. v. Menocal*,
607 U.S. 438 (2026)....................14

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ....................5

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................13, 20

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019) ....................10

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................10, 13, 20

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................16

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................18

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................4, 5

*Graham v. Noom*,
553 F. Supp. 3d 823 (N.D. Cal. 2021) ....................18, 22

*In re Hanford Nuclear Reservation Litig.*,
534 F.3d 986 (9th Cir. 2008) ....................14

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....................19

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1, 26 Cal. Rptr. 2d, 834 P.2d 633 (1994) ....................20

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)....................4

*Lakes v. Ubisoft*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... *passim*

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) .......... 10

*Lee v. Ticketmaster, L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......... 12

*Love v. Handlery Hotels, Inc.*,
2021 WL 2531090 (N.D. Cal. June 21, 2021) .......... 5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 20, 21, 22

*Nwauzor v. GEO Grp., Inc.*,
127 F.4th 750 (9th Cir. 2025) .......... 14

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 13

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 22

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 11, 12

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 11, 12, 13

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) (unpublished) .......... 11

*Smith v. YETI Coolers*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 20

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 10

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 17

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 5

*TBG Ins. Servs. Corp. v. Superior Court*,
96 Cal. App. 4th 443, 117 Cal. Rptr. 2d 155 (2002) .......... 21

*United States v. Mitchell*,
463 U.S. 206 (1983) .......... 13

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....4

*Weiner v. ARS Nat. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012) ....21

*Wiley v. Universal Music Group, Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) ....11

*Wilson v. JPMorgan Chase Bank, NA.*,
2010 WL 2574032 (E.D. Cal. June 25, 2010) ....5

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....11, 12, 20, 21

*Yearsley v. W.A. Ross Constr. Co.*,
309 U.S. 18 (1940) ....2, 14, 16

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....19, 22

**Statutes**

18 U.S.C. § 2510 ....18

18 U.S.C. § 2511 ....17

18 U.S.C. § 2511(2)(c) ....10

18 U.S.C. § 2511(2)(d) ....17

18 U.S.C. § 2702(c)(2) ....19

20 U.S.C. § 1087f ....16

20 U.S.C. § 1087f(a) ....16

20 U.S.C. § 1087f(b)(3) ....16

20 U.S.C. § 1087f(b)(4) ....16

Cal. Penal Code Ann. § 631 ....18

Cal. Penal Code Ann. § 631(a) .... *passim*

Cal. Penal Code Ann. § 632 .... *passim*

Cal. Penal Code Ann. § 632(a) ....10, 21

Cal. Penal Code Ann. § 632(c) ....22

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ *passim*

Fed. R. Evid. 201 ........ 3

Fed. R. Evid. 201(b) ........ 4

Fed. R. Evid. 201(b)(2) ........ 6

Fed. R. Evid. 201(d) ........ 4

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 3, 2026, at 9:00 AM[1] or such other date and time as the Court prefers, before the Honorable Beth Labson Freeman, in Courtroom 1 – 5th Floor, Defendant Central Research, Inc. ("CRI") will, and hereby does, move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6), for entry of an order dismissing Plaintiff Madison Melenudo's Class Action Complaint (Doc. 1) (hereafter, "Complaint") in its entirety with prejudice.

As grounds for this Motion, CRI states that the Complaint fails to state a claim upon which relief can be granted for the following reasons. First, Plaintiff fails to state claims for violations of the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), and California's constitutional guarantee to privacy because Plaintiff gave her express, affirmative consent to the conduct alleged in the Complaint. Second, those claims also fail because CRI, as a contractor of the federal government acting pursuant to validly conferred authority and lacking discretion to carry out its mandate, has a defense to liability for the acts alleged in the Complaint. Third, Plaintiff's ECPA and CIPA claims fail for the independent reason that, on the face of the Complaint, it is apparent CRI was a party to the challenged communications and did not act with the primary motivation of committing a crime or tort. Fourth, Plaintiff fails to state a claim for a violation of CIPA § 631(a) where she fails to allege any predicate violation which CRI aided and abetted a third party to commit. Finally, Plaintiff fails to state a claim for violating the California Constitution's guarantee to privacy or Section § 632 of CIPA where she did not plead any confidential communications and lacked an objectively reasonable expectation of privacy.

The Motion is based on this Notice, the incorporated Request for Judicial Notice and its exhibits and accompanying declaration, the incorporated Memorandum of Points and Authorities, any reply brief, and any further argument that the Court might allow.

[1] CRI has not yet reserved this date, but has made the request to reserve it.

DATED: July 20, 2026

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

By: *s/Erin J. Illman*
Erin J. Illman

*Attorney for Defendant Central Research, Inc.*

## INTRODUCTION

Defendant CRI is a student loan servicer on behalf of the U.S. Department of Education ("DOE") and its office of Federal Student Aid ("FSA"). Madison Melenudo ("Melenudo" or "Plaintiff"), a student loan account holder with CRI, alleges that CRI disclosed the personal information and private communications she generated while using her online CRI account to Google, without her consent, in violation of certain privacy laws.

Plaintiff's allegations do not state a claim. Most critically, the central premise of Plaintiff's Complaint—that she did not consent to the sharing of her information with Google under any circumstance—is refuted by the very webpages of which Plaintiff now complains. Upon navigating to CRI's website, Plaintiff was immediately shown a "cookie banner" which explained that her information would be shared with Google and gave her the ability to opt-out of certain tracking technologies. A separate consent wall prevented Plaintiff from *ever* accessing her online CRI account without first providing express, affirmative consent to CRI's use of Google analytics. Because lack of consent is an essential element to state a claim for the ECPA, CIPA, and a California constitutional Invasion of Privacy claim, all of Plaintiff's claims necessarily fail.

The Complaint should also be dismissed because CRI is a direct contractor of DOE [redacted]. Because CRI had no discretion to avoid the conduct of which Plaintiff complains, it is entitled to a complete defense to Plaintiff's claims pursuant to *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940).

Plaintiff's claims are also subject to several other infirmities. The party exception to the ECPA and CIPA forecloses her claims because Plaintiff did not, and cannot, allege CRI's primary motivation was to commit a crime or tort. She also fails to allege a predicate violation of CIPA §

631(a) which CRI could have aided and abetted a third party to commit. Finally, Plaintiff lacked the necessary expectation of privacy to state a claim for invasion of privacy under the California Constitution, or CIPA § 632, and did not plead any confidential communications.

For all of these reasons, the Court should dismiss the Complaint in its entirety. And because Plaintiff cannot change the fact that she consented to the conduct she challenges and CRI is entitled to a complete defense to her claims, amendment would be futile and dismissal should be with prejudice.

## REQUEST FOR JUDICIAL NOTICE

CRI respectfully requests that the Court take judicial notice under Federal Rule of Evidence 201 (or consider under the incorporation by reference doctrine) two categories of documents: (1) various webpages from CRI's website, https://cri.studentaid.gov (the "Website"), including its welcome page, https://cri.studentaid.gov/welcome (the "Welcome Page") and the Website's log-in flow ("Log-in Flow") (collectively, the "Website Materials"); and (2) CRI's federal contract with DOE ("Contract"), the Business Operations Servicing Requirements attached to the Contract ("Servicing Requirements), the Amendment of Solicitation/Modification of the Contract [redacted] ("Amendment"), the implementation guide from FSA [redacted] ("Guide"), and the compliance statement [redacted] ("Compliance Statement"), all issued by DOE and FSA to CRI (collectively the "Federal Materials"). The Website Materials are attached as Exhibits C–J of the Declaration of Jeff Amundson ("Amundson Decl."), which is submitted in support of this Motion. The Federal Materials are attached as Exhibits A–B and K–M of the Amundson Declaration.

***The Website Materials.*** As discussed in the Motion, Plaintiff conflates the publicly available portions of the Website with the online services accessible to Plaintiff only after she has logged into her CRI account portal (the "Online Services") by simply alleging all violations took place on "the Website." *See* Compl. ¶¶ 2, 6, 10, 31–32, 34, 50–53, 56–58, 63, 67–68, 75, 80, 82, 87, 95–96, 100–03, 111, 124, 142, 148–49. At the same time, Plaintiff alleges the violations on the Website occurred without her consent. *See id* ¶¶ 5–6, 29, 111, 120, 123, 138. Because the Welcome

Page and Log-in Flow through which every user, including Plaintiff, must navigate before he or she can access the Online Services provide needed context to understand Plaintiff's allegations, and because they are either publicly available or indisputable, the Court should take judicial notice of them. In addition, the Court should also find that these documents are incorporated by reference in Plaintiff's Complaint, given Plaintiff's reliance on excerpted portions of the Website to form the basis of her claims.

"The [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned … at any stage of the proceeding." Fed. R. Evid. 201(b), (d). "[A]s a general matter, websites and their contents may be proper subjects for judicial notice." *Caldwell v. Caldwell*, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006). California's federal courts regularly grant requests for judicial notice of publicly available websites in cases involving similar claims and allegations. *See, e.g.*, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 188-90 (N.D. Cal. 2019); *Lakes v. Ubisoft*, 777 F. Supp. 3d 1047, 1053-54 (N.D. Cal. 2025); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1031-32 (S.D. Cal. 2024).

Under the doctrine of incorporation by reference, the Court may consider not only documents attached to the complaint, but also documents whose contents are alleged in the complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. Judicial notice and the incorporation by reference doctrine are designed "to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims

are based." *Gerritsen v. Warner Bros. Ent. Inc.,* 112 F. Supp. 3d 1011, 1024 (C.D. Cal. 2015) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).

Here, Plaintiff has attempted to allege CRI voluntarily chose to engage Google's analytics services without her consent. However, despite repeatedly referencing the Website (*see* Compl. ¶¶ 6–8, 32, 50, 69–71, 73–74, 82), Plaintiff deliberately elides webpages, including CRI's cookie banner and consent wall, that refute her claims and confirm that she consented to the use of Google analytics. Instead, Plaintiff selectively includes just four screenshots from the Website, without explaining from where on the Website they were taken or identifying the webpages through which Plaintiff had to navigate to get to the webpages specifically identified in the Complaint. *See id.* ¶¶ 70, 71, 78. All of the webpages in the Website Materials are publicly accessible or indisputable and they are necessary to provide context omitted by Plaintiff's selective citation to Website pages. *See* Amundson Decl. ¶¶ 7–11. Under both the judicial notice and incorporation by reference doctrines, the Court should consider these documents in evaluating CRI's motion. *See, e.g.*, *In re Google Location History Litig.*, 428 F. Supp. 3d at 188–89; *Love v. Handlery Hotels, Inc.*, 2021 WL 2531090, at *3 (N.D. Cal. June 21, 2021) (considering webpages from the defendant's website under both the judicial notice and incorporation by reference doctrines where the complaint expressly cited the website); *Barnes v. Marriott Hotel Servs., Inc.*, 2017 WL 635474, at *4 (N.D. Cal. Feb. 16, 2017) (taking judicial notice of pages of website).

***Federal Materials.*** Contracts between a private party and government entity are also the proper subjects of judicial notice because they come from "a governmental source whose accuracy cannot be questioned." *See Wilson v. JPMorgan Chase Bank, NA.*, 2010 WL 2574032, at *2 (E.D. Cal. June 25, 2010); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (collecting cases).

Here, the Federal Materials—the Contract, Servicing Requirements, Amendment, Guide, and Compliance Statement—were all issued by DOE or FSA. *See* Amundson Decl. ¶¶ 4–5, 12–13. The Federal Materials are thus the proper subject of judicial notice because they were issued directly by the federal government, which is a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiff's ECPA, CIPA § 631(a), CIPA § 632, and California Invasion of Privacy claims fail as a matter of law because Plaintiff gave her express, affirmative consent to the use of session guidance and analytics services.

2. Whether CRI has a complete defense to liability as a matter of law where CRI had validly conferred authority from DOE and had no discretion [redacted].

3. Whether Plaintiff has stated valid ECPA and CIPA claims where CRI was a party to, and intended recipient of, the communications at issue and did not act with the primary purpose of committing a crime or tort.

4. Whether Plaintiff has failed to plausibly allege a violation of CIPA's wiretapping provision where she does not allege that CRI aided and abetted a third party to commit a predicate violation of Section 631(a).

5. Whether Plaintiff has failed to plausibly allege a violation of the California Constitution's guarantee to privacy, or CIPA § 632, where she lacked a reasonable expectation that the communication would not be overheard or recorded and did not plead confidential communications.

## II. RELEVANT FACTUAL BACKGROUND AND ALLEGATIONS

DOE awards contracts to private entities to service federal student loans on its behalf. In 2023, CRI was awarded the Contract from DOE to service federal student loans on behalf of DOE and its FSA office. Amundson Decl. ¶ 4, Ex. B. Under the Contract, DOE maintains strict requirements on how CRI must service its federal student loan customers, which are outlined in the over 300-page long Servicing Requirements. Amundson Decl. ¶ 4, Ex. A.

Pertinent to Plaintiff's claims here, CRI maintains a Website by which its federal student loan customers, including Plaintiff, may access their online accounts (i.e., the Online Services). Compl. ¶¶ 2, 6. The Website's "Welcome Page," which is the first page to which a user is directed when they visit the Website, includes a cookie banner (the "Cookie Banner") that states as follows:




Amundson Decl. ¶¶ 7–8, Exs. C & D. The Cookie Banner discloses the Website's use of cookies and "similar technologies" for "third-party analytics[] and advertising purposes." *Id.*, Ex. D. The Cookie Banner also directs users, including Plaintiff, to CRI's "privacy policy" (the "Privacy Policy"). *Id.* The Privacy Policy identifies the information CRI collects from users, including "personal information," explains how CRI uses cookies to collect data, and makes clear that CRI "may use third-party analytics services on the Website, such as Google Analytics." *Id.*, Ex. F. The Cookie Banner allowed Plaintiff to affirmatively consent to cookies by selecting the "Accept All" option, affirmatively deny cookies by clicking the "Reject All" option, or give implied consent by continuing to use the website. *Id.* ¶ 8, Ex. D.

After a user navigates past the Welcome Page and its Cookie Banner to attempt to log in, DOE then requires the user be presented with the following consent wall (the "Consent Wall") before an account holder can log in and use CRI's "Online Services":


Before you log in, you must review and accept the following required federal notice.

**Please Read Before Continuing**

You are accessing a U.S. Federal Government computer system intended to be solely accessed by individual users expressly authorized to access the system by the U.S. Department of Education. Usage may be monitored, recorded, and/or subject to audit. For security purposes and in order to ensure that the system remains available to all expressly authorized users, the U.S. Department of Education monitors the system to identify unauthorized users. Anyone using this system expressly consents to such monitoring and recording. Unauthorized use of this information system is prohibited and subject to criminal and civil penalties. Except as expressly authorized by the U.S. Department of Education, unauthorized attempts to access, obtain, upload, modify, change, and/or delete information on this system are strictly prohibited and are subject to criminal prosecution under 18 U.S.C § 1030, and other applicable statutes, which may result in fines and imprisonment. For purposes of this system, unauthorized access includes, but is not limited to:

- any access by an employee or agent of a commercial entity, or other third party, who is not the individual user, for purposes of commercial advantage or private financial gain (regardless of whether the commercial entity or third party is providing a service to an authorized user of the system); and
- any access in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or any State.

If system monitoring reveals information indicating possible criminal activity, such evidence may be provided to law enforcement personnel.

By continuing, you acknowledge and consent to the use of session guidance and analytics services, which may involve the limited collection and processing of data by third-party service providers engaged by us to support our efforts to improve system performance and enhance user experience.

Decline Accept

Amundson Decl. ¶¶ 9–10, Ex. G. The Consent Wall explains that "[b]y continuing, you acknowledge and consent to the use of session guidance and analytics services, which may involve the limited collection and processing of data by third-party service providers [*i.e.*, Google] engaged by us to support our efforts to improve system performance and enhance user experience." *Id.* ¶ 10, Ex. G. The account holder must then click "Accept;" otherwise, he or she cannot log in to his or her account and access CRI's Online Services. *Id.* ¶¶ 9–10, Ex. G. If the user clicks the "Decline" option, the user is asked to confirm their choice and is provided with a hyperlink to a different page explaining available alternatives to payment other than the Online Services. Amundson Decl. ¶ 11, Exs. I & J.

From time to time, DOE issues amendments to the Contract. These amendments are then incorporated into the Contract's Servicing Requirements, which already contain over 300 pages of requirements CRI must follow. As relevant here, in February 2024, CRI received the Amendment to the Contract and its Servicing Requirements, which provided that [redacted] Amundson Decl. ¶ 12, Ex. K. The Servicing Requirements were then updated to include, *inter alia*, that [redacted]

[redacted] Amundson Decl. ¶ 12, Ex. A at 18. DOE also provided CRI with the Guide which [redacted]. Amundson Decl. ¶ 12, Ex. L. Once DOE was satisfied [redacted], on December 19, 2024, it issued CRI the Compliance Statement [redacted] Amundson Decl. ¶ 13, Ex. M.

Plaintiff is a CRI account holder who chose to make her loan payments through CRI's Website using its Online Services. *See* Compl. ¶ 6. In fact, her allegations focus solely on alleged communications that occurred "[a]fter signing into their account portals," meaning only CRI's Online Services are at issue, rather than its Website at large. *Compare* Compl. ¶¶ 31-32, 34 *with* Compl. 35, 69-73. Plaintiff alleges CRI did not "procure[] [her] prior consent to the sharing of her private and protected information." *Id* ¶ 6. She further alleges CRI, "[p]ursuant to agreements with Google," "voluntarily embedded the Google Analytics wiretaps on its Website" which "surreptitiously collect interactions between CRI and its Website users." *Id.* ¶ 67. Plaintiff contends this alleged conduct violates the ECPA, which prohibits the unauthorized, intentional interception of the contents of private communications, Section 631(a) of the CIPA, which prohibits the same, Section 632 of the CIPA, which prohibits the intentional "eavesdropping" of "confidential communications" without consent, and California's constitutional right to privacy.

Plaintiff, however, ignores the fact, as reflected through the webpages discussed above, that she could *only* access CRI's Online Services *after* consenting to the federally-mandated disclosures on CRI's Consent Wall. Amundson Decl. ¶¶ 7–11, Exs. C–D, F–G. Plaintiff also admits that she had a preexisting relationship with Google. *See* Compl. ¶ 6. Plaintiff admits she "created her account with CRI using her Gmail account" and "[w]hen creating her Gmail account, [she] provided certain information *to Google, including her name and phone number*." *Id.* (emphasis added). So, while she later alleges that CRI "shares its users' PII (specifically, the last four digits of the user's phone number and email address handle)" "with its advertising partner, Google," this is information Plaintiff herself admits she had already supplied to Google. *Id.* ¶ 72.

## III. LEGAL STANDARD

CRI moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. "Rule 12(b)(6) applies when a complaint lacks either a 'cognizable legal theory' or 'sufficient facts alleged' under such a theory." *Cody v. Ring LLC,* 718 F. Supp. 3d 993, 997 (N.D. Cal. 2024) (quoting *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019)). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In addition, "a court need not accept as true allegations that contradict matters properly subject to judicial notice." *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (internal quotations omitted); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) ("[W]e need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice.") (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)).

## IV. ARGUMENT

### A. Each of Plaintiff's claims fail because she was required to provide express, affirmative consent before accessing CRI's online services.

The absence of consent is a required element of each of Plaintiff's claims. Under the ECPA, "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where…one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(c). CIPA § 631(a) only prohibits wiretapping "without the consent of all parties to the communication." Cal. Penal Code Ann. § 631(a). Similarly, CIPA § 632 prohibits eavesdropping only when done "without the consent of all parties to a confidential communication." *Id.* at § 632(a). Finally, "[t]he plaintiff in an invasion of privacy action must have

conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014); *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) ("Plaintiffs' consent also bars their common-law tort claims and their claim for invasion of privacy under the California Constitution.").

"Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021); *see also Garcia v. Enter. Holdings, Inc.,* 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) ("Defendants may properly challenge Plaintiff's allegations regarding lack of consent through the instant motion to dismiss."); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (unpublished) (affirming motion to dismiss with prejudice based on consent). CRI's Website and Log-in Flow—of which the Court may take judicial notice or deem incorporated by reference—clearly establish that Plaintiff had notice of and gave affirmative consent to the very Google Analytics tools of which she now complains.

As an initial matter, when Plaintiff first visited the Website, she was presented with the Cookie Banner. Amundson Decl. ¶¶ 7–8, Exs. C & D. The Cookie Banner provided Plaintiff with notice that "[t]his site uses cookies" and gave her options to accept or reject those cookies. *Id.*, Ex. D. It also informed Plaintiff that continued "[u]se of this Website confirms your acceptance of [CRI's] Terms of Use" and it directed Plaintiff to CRI's Privacy Policy. *Id*. The Privacy Policy, in turn, made clear that CRI may use "third-party analytics services on the Website, such as Google Analytics" to collect information. *Id.*, Ex. F. Courts routinely find that cookie banners like the one deployed by CRI provide sufficient notice of a website operator's use of cookies and tracking technologies. *See, e.g.*, *Lakes*, 777 F. Supp. 3d at 1054 ("Defendant argues…[t]his Cookie Banner gave Plaintiffs notice as to the use of cookies."); *Wiley v. Universal Music Group, Inc.*, 826 F. Supp. 3d 1121, 1128-29 (N.D. Cal. 2025); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 870 (N.D. Cal. 2025).

In addition to its Cookie Banner, CRI also required its account holders to navigate through the Consent Wall each and every time they logged into their accounts. Amundson Decl. ¶¶ 9–11, Ex. G. The top of the Consent Wall states clearly and conspicuously that "Before you log in, you must review and accept the following required federal notice." *Id.*, Ex. G. The Consent Wall then provides *three* separate disclosures of collection, processing, and sharing that may occur while using the Online Services:

> "You are accessing a U.S. Federal Government computer system intended to be solely accessed by individual users expressly authorized to access the system by the U.S. Department of Education. **Usage may be monitored, recorded, and/or subject to audit**."
>
> "Anyone using this system **expressly consents** to such monitoring and recording."
>
> "By continuing, **you acknowledge and consent to the use of session guidance and analytics services**, which may involve the limited collection and processing of data **by third-party service providers** engaged by us to support our efforts to improve system performance and enhance user experience."

*Id.* (emphasis added). Plaintiff was presented with these disclosures each and every time she chose to access the Online Services. She also was unable to access her online account without clicking "Accept" to advance past the Consent Wall. *Id.* ¶¶ 9–11, Ex. G.

CRI's Consent Wall functions most similarly to a "sign-in wrap" agreement, which "present[s] a screen that states acceptance of a separate agreement is required before a user can access an internet product or service." *Silver,* 2021 WL 3191752, at *3 (quoting *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019)). Courts, including the Ninth Circuit, regularly find these sign-in wrap-styled agreements establish binding consent to the terms presented to a user. *See, e.g.*, *id.*; *Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (finding valid assent to Ticketmaster's Terms of Use where "each time [plaintiff] clicked the 'Sign In' button…the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use.'"); *In re Yahoo Mail Litig.*, 7 F. Supp. at 1028-29; *Smith*, 262 F. Supp at 953. CRI's Consent Wall is even more conspicuous than consent banners that courts frequently approve

because "[i]t was not, as is often the case, a disclosure buried in a Terms of Service or Privacy Policy that may never be viewed." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014). Instead, CRI's Consent Wall "is presented immediately prior to the moment at which [CRI] is alleged to have engaged in wrongful conduct." *Id.*

Because Plaintiff gave actual consent to CRI's use of Google Analytics each and every time she logged into her account, she cannot state a claim under the ECPA, CIPA, or California's Constitution for an invasion of privacy. *See, e.g.*, *Smith*, 262 F. Supp. at 955-56 (dismissing plaintiffs' ECPA, CIPA, and California constitutional Invasion of Privacy claims with prejudice where plaintiffs consented to alleged conduct); *Lakes*, 777 F. Supp. 3d at 1059-60 (same for the ECPA, CIPA, and VPPA). Although Plaintiff repeatedly alleges that she did not consent (*see, e.g.*, Compl. ¶¶ 5, 6, 29, 111, 120, 123), those allegations should not be credited because they are directly refuted by CRI's Website, including the Cookie Banner and Consent Wall. *See, e.g.*, *Lakes*, 777 F. Supp. 3d at 1053 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 828 ("[A] court need not accept as true 'allegations that contradict matters properly subject to judicial notice' or 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

Because Plaintiff could not have accessed the Online Services without consenting to the very conduct which forms the basis of her ECPA, CIPA, and California Invasion of Privacy claims, this Court should dismiss the Complaint in its entirety with prejudice. *See Smith*, 262 F. Supp. at 956 ("[N]o amendment could change the fact that Plaintiffs consented to [the] conduct.").

### B. As a direct contractor of DOE, CRI is entitled to a defense to liability under *Yearsley*.

Claims of sovereign immunity render the government immune from suit, unless and until the government expressly waives its own immunity. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 218-19 (1983). While government contractors cannot invoke the government's sovereign immunity directly, they are entitled to a defense to liability in certain circumstances. Often referred

to as *Yearsley* immunity, this defense "provides protection to a contractor when it has received a lawful authorization and acted according to its terms." *Geo Group, Inc. v. Menocal*, 607 U.S. 438, 449 (2026) (citing *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940)).[2]

*Yearsley* "immunity" is not a true immunity from suit like sovereign immunity. Instead, it only operates as a defense for government contractors to liability on the merits of a plaintiff's claim. *See id.* ("[B]ecause *Yearsley* protects a contractor only when—and only because—it has acted lawfully, *Yearsley* operates as a defense to liability on the merits."). A *Yearsley* defense is appropriate for a Rule 12(b)(6) motion where it is apparent that "defendants are entitled to the defense based on plaintiff's allegations" or from documents for which the court may take judicial notice. *Bratton v. Broomfield*, 2023 WL 4748838, at *2 (N.D. Cal. July 25, 2023) (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1071 (9th Cir. 2009)).

To assert a claim for *Yearsley* protection, the contractor must establish its actions were "authorized and directed by the Government of the United States and performed pursuant to the Act of Congress." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016), *as revised* (Feb. 9, 2016) (quoting *Yearsley*, 309 U.S. at 20). In the Ninth Circuit, courts apply a two-part test. First, the contractor must show that it "had no discretion in the design process and completely followed government specifications." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)) (internal quotations omitted). "A contractor whose challenged conduct is not dictated by its contract with the government, but is rather within the contractor's discretion, is not entitled to" *Yearsley* protection. *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 770 (9th Cir. 2025). Second, the contractor must show that in directing the contractor, "the government acted within its constitutional authority." *Id.*

[2] Previously, the *Yearsley* defense was referred to as "derivative sovereign immunity" and courts were split on whether it functioned as a true immunity, like sovereign immunity, or instead was just a defense to a claim. In *Menocal*, the Supreme Court made clear that *Yearsley* operates as a defense on the merits, not an immunity from suit. *Id.* at 450-1.

Here, federal statutes and the Federal Materials of which the Court may take judicial notice make clear that both elements are met. Accordingly, CRI is entitled to a complete defense to Plaintiff's claims under *Yearsley*.

*1. CRI* [redacted] *the explicit directions of DOE.*

"Where the Government's authority to carry out the project was validly conferred … there is no liability on the part of the contractor who simply performed as the Government directed." *Campbell-Ewald Co.*, 577 U.S. at 167 (internal quotations omitted). In the Ninth Circuit, to prove that it "simply performed as the Government directed," a government contractor must show that it had "no discretion in the design process and completely followed government specifications." *Cabalce*, 797 F.3d at 732 (internal quotations omitted).

That is precisely the case here. DOE contracted with CRI for CRI to service federal student loans pursuant to DOE's precise Servicing Requirements. Amundson Decl. ¶ 4, Exs. A & B. DOE then imposed upon CRI the Amendment, which required [redacted]. *Id.* ¶ 12, Ex. K. The Servicing Requirements were subsequently updated [redacted] *Id.* ¶ 12, Ex. A at 18. The Amendment provided that [redacted] *Id.* ¶ 12, Ex. K, Ex. A at 18. The Guide then [redacted]. *Id.*, Ex. L. After [redacted], CRI was provided with a Compliance Statement from FSA on December 19, 2024, [redacted] *Id.* ¶ 13, Ex. M.

At no point in this chain of events did CRI [redacted]; instead, DOE [redacted] and CRI "completely followed government specifications." *Cabalce*, 797 F.3d at 732.

*2. The Higher Education Act grants DOE the necessary authority to contract with CRI.*

DOE also possessed the requisite authority under the Higher Education Act ("HEA") to contract with CRI to service federal student loans on its behalf [redacted]

[redacted]. *See* 20 U.S.C. § 1087f. The HEA provides that "[t]he Secretary [of Education] shall…award contracts for origination, servicing, and collection." *Id.* at §1087f(a). Prior to awarding a contract, the HEA requires the Secretary of Education to "determine[] [the servicers] are qualified to provide such services and supplies and will comply with the procedures applicable to the award of such contracts." *Id.* The HEA further allows the Secretary of Education to "enter into contracts for… (3) the establishment and operation of 1 or more data systems for the maintenance of records on all loans made or purchased under this part; and (4) such other aspects of the direct student loan program as the Secretary determines are necessary." *Id.* at § 1087f(b)(3), (4). Accordingly, DOE had the "constitutional authority" to enter into its Contract with CRI [redacted].

Because the conduct of which Plaintiff complains—the use of Google Analytics to track Plaintiff's information—[redacted] CRI is entitled to a complete defense to Plaintiff's claims. *Gomez*, 577 U.S. at 167 (quoting *Yearsley*, 309 U.S. at 20).

**C. The "party exception" forecloses Plaintiff's ECPA and CIPA claims.**

"Under both the ECPA and CIPA, it shall not be unlawful for a person to intercept an electronic communication where such person is a party to the communication, so long as such interception is not for the purpose of committing any criminal or tortious act." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (cleaned up and internal quotations omitted). "Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption." *In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 607 (citing *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015)). Plaintiff squarely admits that CRI was a party to the alleged, unlawful communications, so this issue is undisputed. *See* Compl. ¶ 119 ("Google was a third party to any communication between Plaintiff and California Class Members, on the one hand, and Defendant, on the other."); *see also id.* ¶ 137 ("When communicating with Defendant, Plaintiff and California Class Members had an objectively reasonable expectation of privacy."). While Plaintiff attempts to plead around the party

exceptions to the ECPA and CIPA by claiming that CRI was engaging in criminal or tortious conduct, her allegations have no merit.

*1. The party exception defeats Plaintiff's ECPA claim.*

In an effort to save her ECPA claim, Plaintiff alleges that "[t]he party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts or causes interception to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act." Compl. ¶ 108. In support, Plaintiff claims CRI "violated a provision of the Gramm-Leach-Bliley Act," because the communications allegedly disclosed to Google qualify as "nonpublic personal information" under the GLBA. *See id.* ¶¶ 108-10.[3] Plaintiff's allegations are insufficient to invoke the so-called "crime-tort" exception she attempts to rely on.

"Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original). The crime-tort exception thus requires Plaintiff to allege "either the primary motivation or a determining factor in [CRI's] actions has been to injure [Plaintiff] tortiously." *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). For purposes of this Motion, the Court need not even consider whether the alleged communications qualify as "nonpublic personal information" under the GLBA, then, because Plaintiff "cannot assert the crime-tort exception simply by arguing that Defendant's conduct was illegal or tortious." *Lakes*, 777 F. Supp. 3d at 1057. The Court need only determine whether, according to Plaintiff's Complaint, CRI's *purpose* for the alleged interception was to commit a crime or tort. Plaintiff answers this question on the Court's behalf: "Defendant specifically used the tracking technology provided by Google to track and utilize Plaintiff's and Class members' PII *for financial gain*." Compl. ¶ 109 (emphasis added); *see also id.* ¶ 104 ("This confidential information is then monetized for targeted advertising purposes."). Thus, Plaintiff affirmatively "alleges that the purpose of the interception was not 'to

[3] Plaintiff's Complaint also refers to California's state analogue to the GLBA, CalFIPA, but relies solely on the GLBA's definition of "nonpublic personal information." *See id.*

perpetuate torts on millions of Internet users, but to make money.'" *Lakes*, 777 F. Supp. 3d at 1058 (quoting *In re Google Inc. Gmail Litig.*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)).

Because Plaintiff admits the sole purpose of the alleged interception was "for financial gain," the crime-tort exception fails, and CRI cannot otherwise be held liable as a party to the communication(s) when its primary purpose was not to commit a crime or tort against Plaintiff. Her conclusory allegations to the contrary (*e.g.*, Compl. ¶ 107) are, again, unavailing. *Lakes*, 777 F. Supp. 3d. at 1053 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (citing *Cousins*, 568 F.3d at 1067).

*2. The party exception also defeats Plaintiff's CIPA claims.*

The same party-exception analysis applies to claims under both ECPA and CIPA. *See In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 607. CIPA § 631(a) "applies only to eavesdropping by a third party and not to recording by a participant to a conversation." *Cody*, 718 F. Supp. 3d at 998 (internal citations omitted). Because CRI may not be held directly liable for eavesdropping on or recording its own conversation, Plaintiff must allege CRI aided and abetted a third-party to commit a predicate violation of Section 631(a). *See Graham v. Noom*, 553 F. Supp. 3d 823, 831-33 (N.D. Cal. 2021) (finding no predicate violation to sustain an aiding and abetting claim where defendant was party to the communications). As discussed below, Plaintiff's conclusory allegations do not otherwise state a claim for aiding and abetting a third-party to commit a predicate violation of § 631(a), and the party exception applies with equal force to Plaintiff's CIPA claims. *See infra* IV, D.

**D. Plaintiff has not alleged a predicate violation to attach aiding and abetting liability to CRI or "contents" of a communication under Section 631(a).**

A claim under Section 631 of CIPA must be based on the interception of "contents" of a communication, as opposed to purely "record information." *See Brodsky v. Apple*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (rejecting plaintiffs' assertion that Apple's two-factor authentication "intercepted" communications). This distinction mirrors the ECPA, which defines "contents" as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510; *see also* Compl. ¶ 97. "Record information," on the other hand, "includes the name,

address, and subscriber number or identity of a subscriber or customer." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (quoting 18 U.S.C. § 2702(c)(2)). "Record information" also includes IP addresses and geolocation data. *See Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123-24 (C.D. Cal. 2024).

Plaintiff consistently alleges the "contents" of her communications were unlawfully intercepted by CRI. *See* Compl. ¶¶ 106-107, 111. But Plaintiff never alleges what those specific "contents" were. *See id.* ¶ 32 (referring to "PII" then using "i.e.," to give examples), ¶ 34 ("…typing into data fields, conveying responses to questions and prompts, and actively making other selections" without more), ¶ 70 ("account holder status, as well as the last four digits of their cell phone number and a partial email address"), ¶ 72 (lists "PII" as "the last four digits of the user's phone number and email address handle"), ¶ 73 ("user is making a payment…along with the user's account number"), ¶ 74 (the "user's IP address…[and] information about their specific devices, User-IDs, account numbers, as well as the last four digits of their phone number, and partial email addresses"). At most, Plaintiff has managed to plead only "record information," including the last four digits of her cell phone number, her email address handle, her IP address, and information about her device. *See In re Zynga*, 750 F.3d at 1106-7; *see also Heiting*, 728 F. Supp. at 1123-24. Some of this is information Plaintiff admits she voluntarily gave Google herself. *See* Compl. ¶ 6 ("When creating her Gmail account, Plaintiff provided certain information to Google, including her name and phone number."). None of this information, however, is the "contents" of any communication she had on the Website.

Besides Plaintiff's failure to plead "contents," as discussed above, the party exception prevents CRI from being held liable for anything more than aiding and abetting a predicate violation of Section 631(a). *See supra* IV, C. The Complaint names only one third party, Google, who CRI allegedly aided and abetted. *See* Compl. ¶¶ 119-22. Plaintiff does not plead any predicate violation of Section 631(a) and instead parrots the statutory language. *Compare* Compl. ¶ 116 *with* Compl. ¶¶ 117-23. As CRI has already explained, such conclusory allegations, without more, cannot support Plaintiff's claim, and the Court should therefore dismiss her Section 631(a) claim. *See, e.g., Lakes*, 777 F. Supp. 3d at 1053 ("[C]onclusory allegations of law and unwarranted

inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) ("[A] court need not accept as true 'allegations that contradict matters properly subject to judicial notice' or 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055).

**E. Plaintiff fails to state a claim for a violation of CIPA § 632 or invasion of privacy where she lacked a reasonable expectation of privacy in her communications.**

At the outset, Plaintiff admits she had a preexisting relationship with Google and had already disclosed to Google certain information she now deems private. *See* Compl. ¶ 6. Setting this aside, she has not otherwise stated a claim under CIPA Section 632, or for invasion of privacy under California's Constitution, because she did not have a reasonable expectation of privacy in her communications on the Website. *See In re Yahoo*, 7 F. Supp. at 1037; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022).

*1. Plaintiff's invasion of privacy claim fails because she did not have a reasonable expectation of privacy.*

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *Smith v. YETI Coolers*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (quoting *In re Yahoo*, 7 F. Supp. at 1038). A claim for invasion of privacy under California's Constitution requires a plaintiff to "demonstrate three elements: '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.'" *In re Yahoo*, 7 F. Supp. at 1037 (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994)). A reasonable expectation of privacy "is an objective entitlement founded on broadly based and widely accepted community norms." *Id.* A plaintiff "must have conducted…herself in a manner consistent with an actual expectation of privacy, i.e., …she must not have manifested by…her conduct a voluntary consent to the invasive actions of defendant." *Id.* at 1037-38. Therefore, this Court "must take into account any accepted community norms, advance notice to [Plaintiff], and whether [Plaintiff] had the

opportunity to consent to or reject the very thing that constitutes the invasion." *Id.* at 1038 (quoting *TBG Ins. Servs. Corp. v. Superior Court*, 96 Cal. App. 4th 443, 117 Cal. Rptr. 2d 155 (2002)).

Plaintiff has not alleged that CRI violated any "accepted community norm." On the contrary, she encountered both a Cookie Banner and Consent Wall prior to ever gaining access to the Online Services which form the basis of her allegations. Amundson Decl. ¶¶ 7–11 (and cited exhibits). Plaintiff indisputably had "advance notice" of the third-party analytics services on the Website, then, which were disclosed by both the Cookie Banner and Consent Wall. Similarly, the Consent Wall prevents access to the Online Services prior to receiving a user's affirmative consent, which clearly establishes Plaintiff "had the opportunity to consent to or reject the very thing that constitutes the invasion." *In re Yahoo*, 7 F. Supp. at 1038; Plaintiff's decision to ignore the Cookie Banner and Consent Wall cannot afford her relief under California's Constitution any more than if she had walked into a bank to wire her loan payment and ignored the signs disclosing that her activities inside the bank would be recorded.

Because Plaintiff did not have a reasonable expectation of privacy in her communications on the Website, she cannot state a claim for Invasion of Privacy under California's Constitution, and her claim should be dismissed with prejudice.

2. *Plaintiff cannot establish her communications were "confidential" because she did not have a reasonable expectation of privacy.*

To plead a Section 632 claim, a plaintiff must allege: "(1) an electronic recording of (or eavesdropping on); (2) a 'confidential' communication; and (3) all parties did not consent." *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012). As stated above, Plaintiff necessarily had to provide consent to access the Online Services, and this claim can be dismissed with prejudice on those grounds alone. *See supra* Section IV, A. Separately, Plaintiff has failed to adequately plead her alleged communications were "confidential" as required by Section 632.

"A communication is confidential under Section 632(a) if one of the parties has an objectively reasonable expectation that the conversation is not being overheard or recorded." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022) (internal quotation marks omitted). California courts "have developed a presumption that Internet communications do not

reasonably give rise to that expectation." *Id.* (quoting *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)). The primary inquiry is thus "whether [Plaintiff] ha[s] shown that there is something unique about these particular internet communications which justif[ies] departing from the presumption." *Id.* at 799.

Plaintiff points to the GLBA and CalFIPA to claim her communications were confidential. *See* Compl. ¶¶ 130–35, 137. She explicitly claims "[w]hen communicating with Defendant, Plaintiff and California Class members had an objectively reasonable expectation of privacy, based on the GLBA and CalFIPA." *Id.* ¶ 137. Pointing to a law and its statutory text, and pleading the specific, confidential communications that fall within that law's bounds, are two materially different tasks. The former is all Plaintiff has done. Plaintiff has only alleged CRI disclosed "information related to [her] account holder status, as well as the last four digits of [her] cell phone and a partial email address[,]" "cid, and device information[,]" and "that [she] is making a payment on [her] account, along with [her] account number." *Id.* ¶¶ 70, 72–73. The allegations concerning a cid value and vague "device information" are, at best, record information. *See supra* Section IV, D; *see also Graham*, 533 F. Supp. at 833; *In re Zynga Privacy Litig.*, 750 F.3d at 1105-06. And the remaining disclosures alleged cannot support an objectively reasonable expectation of privacy where they are duplicative of what Plaintiff herself voluntarily revealed to Google. *See* Compl. ¶ 6. Further, because Plaintiff "created her account with CRI using her Gmail account," *see id.*, Google already knows Plaintiff has an account with CRI.

Additionally, Section 632(c) exempts communications made "in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded," from the definition of "confidential." Cal. Penal Code Ann. § 632(c). This exception has been applied to "recorded medium[s]" where a plaintiff knew a communication "would by nature be recorded," including text and internet chat messages. *See Boulton v. Community.com, Inc.*, 2025 WL 314813, at 2 (9th Cir. Jan. 28, 2025). Plaintiff alleges she used CRI's Online Services to pay her student loans. *See* Compl. ¶ 6. Even if Plaintiff had chosen instead to pay by check, wire transfer, or over the phone, the payment, and sufficient details to identify who made the payment and where it needed to be applied, would have been recorded. To the extent

she believed her payment and associated details "would [not] by nature be recorded," such belief is not reasonable and defies the very nature of how a borrower makes any progress on paying down a loan.

Plaintiff's Section 632 claim must be dismissed because she did not have a reasonable expectation of privacy and has failed to plead a confidential communication.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated: July 20, 2026.

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Erin J. Illman*

Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorney for Defendant Central Research, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 20, 2026, a copy of the foregoing was served upon the following person via electronic transmission through the CM/ECF system and electronic mail:

Philip L. Fraietta (SBN 354768)
Bursor & Fisher, P.A.
50 Main Street, Suite 475
White Plains, NY 10606
Phone: (914) 874-0710
Email: pfraietta@bursor.com

*/s/ Erin J. Illman*
Erin J. Illman