**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MADISON MELENUDO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CENTRAL RESEARCH, INC.,

Defendant.

Case No. 5:26-cv-03340-BLF

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Judge: Hon. Beth Labson Freeman
Hearing Date: October 15, 2026
Hearing Time: 9:00 AM
Courtroom: 1 – 5th Floor

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 2

I. Plaintiff Did Not Consent To Defendant's Conduct ..... 2

II. Defendant Is Not Entitled To A Yearsley Immunity ..... 6

III. The Higher Education Act Does Not Exempt Defendant From Liability ..... 8

IV. Defendant's Conduct Falls Squarely Within The ECPA's Crime-Tort Exception ..... 9

V. Plaintiff Adequately Alleges Her CIPA § 631 Claims ..... 11

A. The Party Exception Does Not Shield Defendant From Liability Under CIPA ..... 11

B. Plaintiff Alleges Defendant Aided In Google's Predicate Violation Of Section 631 ..... 13

C. Defendant Intercepted The Contents Of Plaintiff's Communications ..... 14

VI. Plaintiff's Communications Were Confidential ..... 16

VII. Plaintiff States A Claim For Invasion Of Privacy ..... 17

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allison v. PHH Mortg.*,
2026 WL 1353827 (N.D. Cal. May 14, 2026) .......... 1, 4, 5, 10

*Ambriz v. Google*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .......... 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 15

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 17

*Bratton v. Broomfield*,
2023 WL 4748838 (N.D. Cal. July 25, 2023) .......... 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 10

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 11, 15, 16

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
797 F.3d 720 (9th Cir. 2015) .......... 6, 8

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 4

*Campbell-Ewald Co.*,
577 U.S. (2016) .......... 6, 8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 9

*Flanagan v. Flanagan*,
41 P. 3d 575 (Cal. 2002) .......... 16

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .................... 14

*Garcia v. Truist Fin. Corp.*,
825 F. Supp. 3d 1149 (C.D. Cal. 2026) .................... 1, 10

*Geo Grp., Inc. v. Menocal*,
607 U.S. 438 (2026) .................... 6

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .................... 3

*Goldstein v. Rumble Inc.*,
2025 WL 3691987 (C.D. Cal. Nov. 6, 2025) .................... 14

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .................... 2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... 17, 18

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................... 4

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .................... 3, 4

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .................... 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .................... 15

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................... 4

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................... 15

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) .................... 2

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .................... 15

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .................... 11

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .................... 3

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ..... 17

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..... 2

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018) ..... 6

*Marden v. LMND Medical Group, Inc.*,
2024 WL 4448684 (N.D. Cal. 2024) ..... 10

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ..... 14

*Padilla v. City of Richmond*,
509 F. Supp. 3d 1168 (N.D. Cal. 2020) ..... 3

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..... 10, 15

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ..... 9, 10

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ..... 11

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..... 10, 11

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ..... 13, 14

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..... passim

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ..... 3

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ..... 16

*Smith v. Rack Room Shoes, Inc.*,
("Smith I"), 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ..... 3, 14, 16, 19

*Smith v. Rack Room Shoes, Inc.*,
("Smith II"), 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ..... 10

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..... 17

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) ........ 2

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ........ 9

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........ 12

*Tourgeman v. Collins Fin. Servs., Inc.*,
2009 WL 6527758 (S.D. Cal. Nov. 23, 2009) ........ 17

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 3

*Valley Bank of Nev. v. Superior Court*,
15 Cal.3d 652 (1975) ........ 17

*Yearsley v. W. A. Ross Construction Co.*,
309 U.S. 18 (1940) ........ 8

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 12, 14

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 14

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 14

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ........ passim

**STATUTES**

20 U.S.C. § 1087f ........ 8, 9

20 U.S.C. § 1087f(a)(1) ........ 8

Cal. Fin. Code § 4051 ........ 1, 9

Cal. Fin. Code § 4051(b) ........ 18

Cal. Fin. Code § 4052 ........ 18

Cal. Fin. Code § 4052.5 ........ 9, 18

Cal. Penal Code § 630 ........ 11

Cal. Penal Code § 631 ........ 12, 13, 14

Cal. Penal Code § 631(a) .......... 11, 12, 13

Cal. Penal Code § 632 .......... 16

Cal. Penal Code § 632(a) .......... 11

Cal. Penal Code § 632(c) .......... 16

Public Law 106-102 .......... 18

**RULES**

Fed. R. Civ. P. 8 .......... 15

Fed. R. Evid. 201 .......... 2

**REGULATIONS**

16 C.F.R. § 313 .......... 1

16 C.F.R. § 313.3 .......... 9, 18

**INTRODUCTION**

Congress and the California Legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for and using financial products and services. *See* 16 C.F.R. § 313; Cal. Fin. Code § 4051*; see also Shah v. Capital One Financial Corp*., 768 F. Supp. 3d 1033, 1052–54 (N.D. Cal. 2025) (denying motion to dismiss ECPA and CIPA §§ 631–32 claims); *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149, 1166–69 (C.D. Cal. 2026) (denying motion to dismiss ECPA, CIPA §§ 631–32, and invasion of privacy); *Allison v. PHH Mortg.*, 2026 WL 1353827, *5–6, *10–11 (N.D. Cal. May 14, 2026) (denying motion to dismiss ECPA and CIPA § 632 claims); *Zocco v. Nelnet, Inc.*, 2026 WL 242037, *6–8 (N.D. Cal. Jan. 29, 2026) (denying motion to dismiss invasion of privacy claim). Despite such duties to prevent consumers' private information from disclosure, Defendant Central Research, Inc. ("Defendant") unlawfully intercepts and discloses its student loan borrowers' personal and financial information to Google LLC ("Google"), an unknown third party, when borrowers navigate their private financial accounts on cri.studentaid.gov (the "Website"). Complaint ¶¶ 1–8, 31–81 (ECF No. 1) ("Compl.").

Plaintiff Madison Melenudo ("Plaintiff") is a resident of California who regularly accesses her account on Defendant's Website to make loan payments. Compl. ¶¶ 6–7 (ECF No. 1) ("Compl."). Unbeknownst to Plaintiff, the confidential information she provided in connection with her loan payments was intercepted by Defendant through its use of Google Analytics, and simultaneously disclosed to Google LLC ("Google"). *Id.* This private information included Plaintiff's status as a loan borrower, the last four digits of her phone number, unique Google identifiers, partial email address, and details about Plaintiff's use of the Website whilst logged in (e.g. account number, when Plaintiff made a payment, whether Plaintiff was seeking different deferment, repayment, forbearance options, etc.). Compl. ¶¶ 67–81; Figs. 1–4. Such disclosures were not made to provide Plaintiff with services, but rather to bombard her with harassing targeted advertising. Such conduct is unlawful under both state and federal law.

Defendant now moves to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 14) ("MTD"). However, each argument raised by

Defendant is without merit. For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 959–60. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT[1]

### I. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S CONDUCT

Defendant argues that "[e]ach of Plaintiff's claims fail because she was required to provide express, affirmative consent before accessing CRI's online services." MTD at 10. That is wrong.

"For a defendant to show consent through disclosures, the disclosures must 'explicitly notify' users of the practice at issue and must have only one plausible interpretation." *J.S. v. Spring Fertility*

[1] Defendant requests this Court take judicial notice of thirteen exhibits that purportedly exempt it from liability. M MTD at 3–5; ECF No. 14-1 (Amundson Decl.); ECF Nos. 14-2–14-14 (Ex. A–M). However, Federal Rule of Evidence 201 applies only to facts that "are not subject to reasonable dispute." Fed. R. Evid. 201. Defendant's requests go solely to disputed facts—tellingly, they paint a one-sided picture in Defendant's favor—contrary to the standard for a motion to dismiss which requires the Court to draw all reasonable inferences in ***Plaintiff's*** favor. *Iqbal*, 556 U.S. at 678–79. Accordingly, this Court should deny Defendant's request to the extent that the documents go towards disputed facts.

*Holdings, LLC*, 2026 WL 1483490, *2 (N.D. Cal. May 27, 2026) (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019)). Crucially, consent is "generally limited to the specific conduct authorized." *Smith v. Rack Room Shoes, Inc.* ("*Smith I*"), 2025 WL 1085169, at *1 (N.D. Cal. Apr. 4, 2025) (citing *Javier v. Assurance IQ, LLC*, , 2021 WL 940319, *2 (N.D. Cal. Mar. 9, 2021)). Simply put, consent is measured against the conduct ***actually*** challenged, not against cookies or analytics in the abstract.

As a preliminary matter, Defendant's reliance on the Cookie Banner to incorporate its terms and conditions and privacy policy fails. *See* MTD at 11. Defendant has not established actual or inquiry notice (requiring reasonably conspicuous notice and an unambiguous manifestation of assent), and this Court should not entertain such arguments for the first time on reply. *See e.g., Godun v. JustAnswer LLC*, 135 F.4th 699, 708–12 (9th Cir. 2025) (internet contracts); *Padilla v. City of Richmond*, 509 F. Supp. 3d 1168, 1180 (N.D. Cal. 2020) ("As a general rule, courts do not consider arguments raised for the first time on reply"). Defendant cannot rely on the Banner's own text to close the gap. Stripped of the Privacy Policy, the Banner discloses only that the site "uses cookies" for "third-party analytics[] and advertising purposes." MTD at 7. That is notice that a category of technology exists somewhere on the site; it is not consent to the in-portal tracking of sensitive financial information depicted in the Complaint. *See e.g.* Compl. ¶ 73; Figs. 1–4. The Banner appears on the public Welcome Page—not inside Plaintiff's private financial portal where the tracking occurs. *See* MTD at 6–7. Accordingly, Defendant's only real argument as to consent is the Consent Wall.

Consent is not a general waiver of privacy rights. It reaches only what the consumer was actually notified of, and it is narrowly confined to the scope of the disclosure consented to. *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) ("In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization."); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 ("Consent is only effective if the person

alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) ("Plaintiffs contend that this provision is too general to conclusively establish consent, and the Court agrees"). Under the standard Defendant quotes, a plaintiff "must not have manifested by his or her conduct a voluntary consent to ***the invasive actions of defendant,***" that is, to the specific conduct alleged, not to some adjacent practice. MTD at 11 (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037–38 (N.D. Cal. 2014)) (emphasis added).

The question before the Court is a simple one: whether what Plaintiff clicked expressly disclosed "the very thing that constitutes the invasion." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037; *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 192 ("'[C]onsent is not an all-or-nothing proposition.' . . . A party may consent to 'the interception of only part of a communication or to the interception of only a subset of its communications.'"). The Consent Wall's disclosures do not meet this threshold.

*First,* the relationship described in the Consent Wall is not the relationship alleged in the Complaint. The Consent Wall describes vendors "engaged by [Defendant]," i.e., service providers performing work on the Defendant's behalf. MTD at 8, 12. The Complaint alleges something categorically different: that Defendant intercepts and discloses to Google—an internet advertising company—Plaintiff's PII and private financial information, which Google then uses for its own purposes (such as targeted advertising and the improvement of its own advertising products). Compl. ¶¶ 31–35, 36–66, 67–81, 119, 121. A borrower who is told that Defendant has engaged service providers to help it run the Website has not been told that an advertising company is taking her sensitive financial and nonpublic personal information for itself. *Accord Allison v. PHH Mortg.*, 2026 WL 1353827, at *6 ("to the extent that the Privacy Contracts disclose that PHH collects user data and shares it with third parties, it does not disclose that the data collected is individualized. The

provisions PHH points to in the Privacy Contracts confirm this fact, as they disclose only that PHH shares information with third parties for marketing purposes but does not clarify whether that information is individualized or aggregated.”).

*Second,* the Consent Wall’s description indicates data collection and processing is “limited.” MTD at 8, 12. Nothing in the Consent Wall tells Plaintiff that Defendant discloses to Google her “PII (*e.g.* the last four digits of their phone number, partial email addresses, account number, and device information) and information about their financial activity with CRI (e.g. account status, account number, payment submissions, economic hardship applications)” to Google for its own purposes. Compl. ¶ 32.

*Third*, the purpose described in the Consent Wall does not match the purpose alleged in the Complaint. The Consent Wall states the purpose is “to improve system performance and enhance user experience.” MTD at 8, 12. By way of contrast, the Complaint alleges that Defendant integrated Google Analytics “to assist with . . . marketing efforts,” and that Defendant intercepts and discloses this information so that both Defendant and Google may “profit from this information for targeted advertising purposes.” Compl. ¶¶ 31, 43–45,52–54, 66, 72, 81.

The Consent Wall’s remaining disclosures do not salvage Defendant’s position—they merely warn that “[y]ou are accessing a U.S. Federal Government computer system,” that “[u]sage may be monitored, recorded, and/or subject to audit,” and that “[a]nyone using this system expressly consents to such monitoring and recording.” MTD at 8, 12. A borrower who consents to federal oversight of a federal system has not consented to the commercial disclosure of her financial activity to an unknown third party, Google.

At a minimum, Defendant’s disclosures create an ambiguity not fit for resolution on a motion to dismiss. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d at 1053 (“Because consent is a factual determination, it cannot be determined on the pleadings.”); *see also Allison II.*, 2026 WL 1353827, at *6.

## II. DEFENDANT IS NOT ENTITLED TO A YEARSLEY IMMUNITY

Defendant argues that "[a]s a direct contractor of DOE, CRI is entitled to a defense to liability under *Yearsley*." MTD at 13. That is wrong. *Yearsley* is a merits defense and every element Defendant must establish presents a question of fact that cannot be resolved without a fully developed evidentiary record.

The Supreme Court recently explained "because *Yearsley* protects a contractor only when—and only because—it has acted lawfully, *Yearsley* operates as a ***defense to liability on the merits***." *Geo Grp., Inc. v. Menocal*, 607 U.S. 438, 449 (2026). Defendant even concedes the point, acknowledging that *Yearsley* "immunity" "is not a true immunity from suit like sovereign immunity" and "only operates as a defense for government contractors to liability on the merits of a plaintiff's claim." MTD at 14. Nonetheless, Defendant, relying on *Bratton v. Broomfield*—***a qualified immunity case***—asserts that this Court should resolve a ***merits defense*** on a motion to dismiss. *Compare Bratton v. Broomfield*, 2023 WL 4748838, at *2 (N.D. Cal. July 25, 2023) *with Geo Grp., Inc. v. Menocal*, 607 U.S. at 461 (Alito, J., concurring) ("qualified immunity provides a greater protection to contractors than *Yearsley* does. Whereas *Yearsley* shields only those contractors who act within the bounds of their legal authorization, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"); *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 (9th Cir. 2018) ("Ordinarily, affirmative defenses such as preemption may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact."). Simply put, Defendant is asking this Court to enter judgment for it on the merits of an affirmative defense, at the pleading stage, before any discovery. *See* MTD at 13–16.

*Zocco v. Nelnet, Inc.,* is instructive. There, under materially similar allegations, the court explained:

> Even assuming Nelnet brought its motion as one for summary adjudication of its derivative sovereign immunity defense, Nelnet is not entitled to derivative sovereign immunity on this record. Derivative sovereign immunity is confined to cases where a government "***contractor had no discretion*** in the design process and completely followed government specifications." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (cleaned up); *see also Campbell-Ewald Co.*, 577 U.S. at 167 (2016).

> Here, the record does not demonstrate that Nelnet had no discretion in its implementation of Google Analytics and other tools.

*Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *4. Here, Plaintiff alleges that "[p]ursuant to agreements with Google, CRI *voluntarily* embedded the Google Analytics wiretaps on its Website." Compl. ¶ 67 (emphasis added). She alleges Defendant "has integrated the Google Analytics wiretaps into the Website to assist with its marketing efforts" (Compl. ¶ 31); she alleges Defendant "understands that the information handled on the Website is protected by state and federal law" (Compl. ¶ 68); that Defendant "engages in this deceptive conduct for their own profit at the expense of their users' privacy" (Compl. ¶ 81); that Google "utilizes such information for its own purposes, such as targeted advertising" (Compl. ¶ 66); and she alleges the disclosures continued *inside* the borrower portal, attaching account numbers and payment-completion events to a persistent Google identifier. Compl. ¶¶ 50, 69–74, 77–78.

Even taking Defendant's extrinsic materials at face value, they do not establish what Defendant claims. On Defendant's own account, [redacted] (Amundson Decl. ¶ 12, Ex. K); [redacted] (Amundson Decl. ¶ 12, Ex. A at 18.); [redacted] (Amundson Decl. ¶ 12, Ex. L). MTD at 8–9, 15. [redacted]. Nothing Defendant describes [redacted] where borrowers view statements and make payments. Compl. ¶¶ 50, 69–71. Nothing directed Defendant [redacted]. Compl. ¶ 73; Figs. 2–3. Nothing directed [redacted]. Compl. ¶¶ 70, 72, 74; Fig. 1. [redacted]. Compl. ¶¶ 77–78; Fig. 4. There are many ways to implement an analytics standard, and a directive silent [redacted] as to general implementation does not eliminate the implementer's

discretion—it confirms it. *Zocco*, 2026 WL 242037, at *4 (explaining high-level implementations requirements "do not demonstrate [a defendant's] complete lack of discretion in how to implement Google Analytics throughout its webpage.").

## III. THE HIGHER EDUCATION ACT DOES NOT EXEMPT DEFENDANT FROM LIABILITY

Defendant argues "CRI is entitled to a complete defense to Plaintiff's claims" because the Higher Education Act permits the Department of Education "to contract with CRI to service federal student loans on its behalf." MTD at 15–16. Not so.

A government contractor is not cloaked in immunity when "the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred." *Yearsley*, 309 U.S. at 21; *supra-Sec.* II. Put differently, a *Yearsley* defense requires both a valid governmental authorization and a contractor that did not exceed it. *See Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 167 (2016); *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015). Because Defendant cannot establish that it lacked discretion in implementing Google Analytics, the Court need not reach whether the Higher Education Act separately establishes that the government acted within its constitutional authority. In any event, the statutory provisions Defendant relies on regulate how loan servicers like Defendant collect and transmit borrower information to the DOE, and what information must be disclosed to borrowers. *See* 20 U.S.C. § 1087f. They do not mandate, or even reference, the implementation of third-party tracking technologies or disclosure of sensitive communications to private third-parties like Google. MTD at 15–16.

Section 1087f says nothing to the contrary. It merely authorizes the Secretary to "award contracts for origination, servicing, and collection" (20 U.S.C. § 1087f(a)(1)); to contract for "the establishment and operation of 1 or more data systems for the maintenance of records on all loans made or purchased under this part" (*id.* § 1087f(b)(3)); and to contract for "such other aspects of the direct student loan program as the Secretary determines are necessary" (*id.* § 1087f(b)(4)). Authority to contract for loan servicing and for systems that ***maintain records*** is not authority to surreptitiously route a borrower's student loan account activity and hardship inquiries to an advertising company for its own independent use. Defendant identifies no provision suggesting Congress authorized the

DOE to direct its contractors to disclose borrowers' nonpublic personal financial information to unaffiliated third parties. *Compare* 20 U.S.C. § 1087f; *with* 16 C.F.R. § 313.3 *and* Cal. Fin. Code § 4052.5 (a financial institution "shall not sell, share, transfer, or otherwise disclose nonpublic personal information to or with any nonaffiliated third parties without the explicit prior consent of the consumer"); *see also Zocco*, 2026 WL 242037, *6–8 (declining the defendant's position that the Higher Education Act preempts materially similar claims).

## IV. DEFENDANT'S CONDUCT FALLS SQUARELY WITHIN THE ECPA'S CRIME-TORT EXCEPTION

Defendant posits "[b]ecause Plaintiff admits the sole purpose of the alleged interception was 'for financial gain,' the crime-tort exception fails, and CRI cannot otherwise be held liable as a party to the communication(s) when its primary purpose was not to commit a crime or tort against Plaintiff." MTD at 18. Not so. Defendant's position relies on misstatements of law and fact.

***First***, Plaintiff alleges tortious and criminal conduct independent of the interception itself. Plaintiff alleges Defendant intercepted—and disclosed—Plaintiff's nonpublic personal financial information to Google in violation of the GLBA and CalFIPA. Compl. ¶¶ 20–30, 67–81, 107–109; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) (explaining the "intentional disclosure of private information constituted a further impropriety independent and separate from the interception of private information.") (cleaned up); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *4–7 (C.D. Cal. Jan. 13, 2025) (same); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious."). Both statutes prohibit a financial institution—like Defendant—from disclosing nonpublic personal information to an unaffiliated third party without the consumer's explicit prior consent, and CalFIPA was enacted by the California Legislature to "afford persons greater privacy protections" than the GLBA. Cal. Fin. Code § 4051.

*Shah v. Capital One Financial Corp.* is instructive. In *Shah*, the plaintiff alleged that the defendant installed various third party tracking software, including tracking software from Google, that intercepted private information related to his account information. *Shah*, 768 F. Supp. 3d at 1041–42. The court denied the defendant's motion to dismiss, holding the defendant's actions were

allegedly tortious.[2] *Id.* at 1053; *Garcia*, 2026 WL 972328, at *10 (same); *Garcia*, 825 F. Supp. 3d at 1166–67 (same); *Allison v. PHH Mortg.*, 2026 WL 1353827, at *11 (N.D. Cal. May 14, 2026) ("the complaint alleges that PHH installed trackers on its website to trade customers' sensitive financial information to reduce the cost of marketing services. . . That is sufficient to allege a purpose to invade privacy for PHH's profit, which triggers the crime-tort exception."); *Smith v. Rack Room Shoes, Inc.* ("*Smith II*"), 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) ("Given Rack Room's alleged active role in the act of intercepting, the interception was not done just by Attentive, Meta, or the other third parties, but also alleged to have been actively done by Rack Room. As such, Rack Room's purpose in engaging in that interception is sufficient to satisfy the crime-tort exception."); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("Plaintiffs have adequately alleged that Google's association of their data with preexisting user profiles [without consent] violated state law, including CDAFA, intrusion upon seclusion, and invasion of privacy."). Here, likewise, Plaintiff alleges Defendant, a regulated institution under both CalFIPA and the GLBA, embedded Google's advertising tracker inside borrowers' private account portals and disclosed borrowers' sensitive financial details and nonpublic personal information to Google without consent. Compl. ¶¶ 4, 6–7, 67–81, 107–110.

***Second***, a majority of courts within this Circuit agree "a monetary purpose does not insulate a party from liability under the ECPA, at least at the motion to dismiss stage." *R.S.*, 2025 WL 103488, at *7; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply"); *Marden v. LMND Medical Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. 2024) ("[C]ontrary to [the defendant's] argument that any alleged interception was for [the defendant's] sole benefit and thus still within the party exception, [p]laintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers."); *Riganian v.*

[2] Plaintiff's ECPA claim can also be sustained because consent is central to the dispute. *Shah*, 768 F. Supp. 3d at 1053 ("Because consent is a factual determination, [whether the one-party exemption applies] cannot be determined on the pleadings"); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 n. 3 (N.D. Cal. 2025) ("successful assertion of the crime-tort exception negates any consent").

*LiveRamp Holdings, Inc.*, 791 F. Supp. 3d at 1090 ("this Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable.").

## V. PLAINTIFF ADEQUATELY ALLEGES HER CIPA § 631 CLAIMS

### A. The Party Exception Does Not Shield Defendant From Liability Under CIPA

Defendant argues that because the "party-exception analysis applies to claims under both ECPA and CIPA" Plaintiff's CIPA claim also fails. MTD at 18. That is wrong.

Defendant's argument conflates the ECPA's one-party consent statute with CIPA which is an all-party consent statute.[3] *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("the California Supreme Court would interpret Section 631(a) to require the prior consent of ***all*** parties to a communication") (emphasis added); *Brown v. Google LLC,* 685 F. Supp. 3d 909, 937 n. 33 (N.D. Cal. 2023) (the defendant's "argument is problematic for another reason—it creates a workaround to CIPA's two-party consent rule. Cal. Penal Code § 630").

Because CIPA demands the consent of *all* parties, Defendant's consent to Google's presence on the Website is legally insufficient to invoke the party exception. Google would only have been permitted to intercept Plaintiff's communications ***if Plaintiff herself also consented***—which she did not. *See Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985) (explaining that CIPA's purpose is to protect speakers from the "simultaneous dissemination to an unannounced second auditor" of their communications); *supra* Section I. Plaintiff's allegations make unequivocally clear that she never provided such consent. *See e.g.*, Compl. ¶ 123 ("Plaintiff and members of the California Class did not provide their prior consent [to] Google's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and California Class members' electronic communications. Nor did Plaintiff and California Class members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling Google's conduct.").

Defendant's argument that "Plaintiff's conclusory allegations do not otherwise state a claim for aiding and abetting" fares no better. MTD at 19. Plaintiff's Complaint specifies Defendant's

---

[3] Section 632(a) likewise prohibits any person from "intentionally and without the consent of ***all*** parties to a confidential communication" using an electronic device to eavesdrop upon or record that communication. Cal. Penal Code § 632(a) (emphasis added).

liability for violations of CIPA under a theory of aiding Google's unlawful conduct. *See* Cal. Penal Code § 631(a) (imposing liability on any person who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any prohibited act).

Plaintiff's Complaint alleges that "Defendant aided, agreed with, employed, permitted, or otherwise enabled Google to wiretap Plaintiff and members of the California Class through Google Analytics to accomplish the wrongful conduct at issue here." *See, e.g.,* Compl. ¶ 122. The Complaint is replete with allegations that Plaintiff did not consent to Defendant sharing her personally identifiable information and confidential financial information with non-party Google—nor could she, as Defendant's installation of the Google tracking technologies was unknown to her. Compl. ¶¶ 5–6, 29, 31–33, 67, 70, 123. When read in conjunction with her allegations that Google uses this information for its own purposes (Compl. ¶¶ 43–44, 49–50, 54–56, 61, 64–66), Plaintiff's allegations are clear: Defendant aided non-party Google's interception of Plaintiff's communications without consent, such that Defendant is liable under Section 631. Such allegations are routinely held to be sufficient at the motion to dismiss stage. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) ("Because Plaintiffs have properly alleged that Salesforce has the ability to use its record of the interaction for other purposes beyond just furnishing them to customer websites, the Court finds that Plaintiffs have alleged sufficient facts to meet the plausibility requirement."); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) ("As discussed above, Plaintiff Tate has pled facts that would support a viable claim that Invoca has violated the statute. Plaintiff's claims that VITAS has supported Invoca in doing so by allowing Invoca access to the calls and has presumably paid Invoca to analyze the data those calls yield are sufficient to implicate section 631(a). Accordingly, the Court finds that VITAS may be found liable under section 631(a) for its role in assisting Invoca's monitoring and analysis of calls made to VITAS."); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause.").

### B. Plaintiff Alleges Defendant Aided In Google's Predicate Violation Of Section 631

Defendant argues "Plaintiff does not plead any predicate violation of Section 631(a) and instead parrots the statutory language." MTD at 19. That is wrong.

Plaintiff alleges that Google is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device," that "Google has the capability to use and does use the wiretapped information for its own purposes," and that "Google was a third party to any communication between Plaintiff and California Class Members, on the one hand, and Defendant, on the other." Compl. ¶ 119 (quoting *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520–21 (C.D. Cal. 2021)). She alleges that Google "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while the electronic communications were in transit or were being sent from or received at any place within California." Compl. ¶ 120. And she alleges Google "used or attempted to use the communications intercepted to, *inter alia*, monitor and improve its products and services." Compl. ¶ 121. Those allegations are bolstered by the section of the complaint detailing precisely how Google's technology operates, allowing it to generate billions of dollars in annual ad revenue. Compl. ¶¶ 36–66. Read together, Plaintiff states violations of the second and third clauses of Section 631(a) by Google—the predicate Defendant asserts is absent.

As Judge Lin explained in *Ambriz v. Google*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025):

> Ninth Circuit courts are frequently called upon to apply the guidance of Ribas and Rogers to software service cases, and a split has emerged in courts' application of Section 631(a) to these facts. Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the "extension test." Other courts require only that plaintiff allege the software vendor has the capability to use the data for its own purposes.

*Id.*, at *3 (emphasis in original).

Here, Plaintiff's allegations are sufficient under either approach. For example, the Complaint alleges that "Google has the capability to use and does use the wiretapped information for its own purposes," including targeted advertising. Compl. ¶ 119. Additionally, under the "extension test,"

the Complaint alleges that Google indeed uses the information it collects for its own purposes. Compl. ¶¶ 42–44, 49, 53–55, 67–81. At this stage, nothing more is required. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d at 952 (where the plaintiffs allege defendant had "the ability to use its record of the interaction for other purposes beyond just furnishing them to customer websites, the Court finds that Plaintiffs have alleged sufficient facts to meet the plausibility requirement"); *see Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021); *Ambriz*, 2025 WL 830450, at *3; *Goldstein v. Rumble Inc.*, 2025 WL 3691987, at *3 (C.D. Cal. Nov. 6, 2025) ("[W]hen data is transmitted to an independent entity that uses or is capable of using the data for that entity's own purposes, courts treat the third-party code as an eavesdropper and allow aiding and abetting claims to proceed against the website's owner."); *Smith I*, 2025 WL 1085169, at *5 ("it is plausible to infer from [defendant's] alleged affirmative act of integrating the third-party code into its website that it knew [the third parties] would intercept [PII]"); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024) ("knowingly 'programm[ing] such third-party tracking technology into its website for advertising purposes and to increase its profits'" suffices to plead aiding and abetting); *cf. Gabrielli v. Motorola Mobility LLC,* 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (citing *Zarif v. Hwareh.com, Inc.,* 2025 WL 486317, at *8, 10 (S.D. Cal. Feb. 13, 2025) (explaining that the Ninth Circuit has interpreted the intent standard under the federal Wiretap Act to require only an act being done on purpose, rather than done with the knowledge that it is unlawful, and then applying that analysis to also reject a challenge to CIPA Section 631)).

**C. Defendant Intercepted The Contents Of Plaintiff's Communications**

Defendant suggests Plaintiff fails to allege a predicate violation to CIPA § 631 because she "never alleges what . . . specific 'contents' were" intercepted and disclosed. MTD at 19. Not so.

Under both the ECPA and CIPA, courts interpret "content" as "the intended message conveyed by the communication . . . not includ[ing] record information." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (quotations omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts throughout the Ninth Circuit construe "content"

broadly to include the names of buttons clicked and descriptive URLs. *See, e.g.*, *James v. Walt Disney Co*., 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) ("Plaintiffs have alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted. This makes it unlikely that Plaintiffs are simply implicating record information – i.e., information regarding the characteristics of a message as opposed to the substance of the message itself."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("log-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are 'contents' within the meaning of the statute"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022); *R.C. v. Walgreen Co*., 733 F. Supp. 3d at 902 ("Content" includes "URLs which disclose search terms that reveal website users' personal interests, queries, and habits."); *Brown v. Google LLC*, 685 F. Supp. 3d at 935–36. *In re Zynga* affirms Plaintiff's position, explaining that "[u]nder some circumstances . . . divulging a URL containing [a] search term to a third party could amount to a disclosure of the contents of a communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014); *see also Shah*, 768 F. Supp. 3d at 1052–54.

Plaintiff's allegations are clear—the Complaint details, with screenshots, exactly the kind of substantive transmissions that constitute content. For example: Figure 2 depicts Defendant intercepting and disclosing to Google that a borrower is making a payment on her account, together with her account number, Figure 3 depicts Defendant disclosing that the payment is complete, and Figure 4 depicts event data disclosing that a user is seeking loan repayment or deferment. Compl. ¶¶ 67–81, Figs. 2–4. This is not mere record information as Defendant suggests. Rather, the disclosures reveal (i) that the borrower is attempting to make a payment, (ii) the specific account to which that payment is directed, and (iii) whether the borrower is experiencing financial hardship such that she must seek deferment. *Id.* Such information constitutes content as it reveals the substance of Plaintiff's loan-management instructions to Defendant.

Defendant's attempt to require that Plaintiff detail the "contents" intercepted with greater precision is contrary to Federal Rule of Civil Procedure 8 which is designed to displace the "hypertechnical, code-pleading regime of a prior era." *Iqbal,* 556 U.S. at 678. At the motion to

dismiss stage, Plaintiff need only plausibly allege—not prove with precision—that content-bearing communications were acquired. *Shah*, 768 F. Supp. 3d at 1052–54.

## VI. PLAINTIFF'S COMMUNICATIONS WERE CONFIDENTIAL

Defendant argues "Plaintiff has failed to adequately plead her alleged communications were 'confidential' as required by Section 632." MTD at 21. That is wrong.

A communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002); *Brown v. Google LLC*, 685 F. Supp. 3d at 936 ("The standard of confidentiality is an objective one defined in terms of reasonableness."). This is a "fact-intensive inquiry" that is often too difficult to resolve at the pleadings stage. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023).

Even so, Plaintiff has established that she possessed an objectively reasonable expectation that the sensitive details of her activity within her financial account were not being recorded. Compl. ¶¶ 2–4, 20–35, 67–81; *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199–1200 (N.D. Cal. 2024) (in denying Defendant's motion to dismiss a 632 claim the court emphasized the sensitive nature of financial information submitted to a tax preparation website); *Brown*, 685 F. Supp. 3d at 938 ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Smith I*, 2025 WL 1085169, at *5 ("[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.") (quoting *Flanagan v. Flanagan,* 27 Cal. 4th 766, 776–77 (2002)).

Defendant's argument that "Section 632(c) exempts communications made 'in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded,' from the definition of 'confidential'" fares no better. MTD at 22; Cal. Penal Code Ann. § 632(c). "California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632." *Smith v. Google, LLC*, 735 F. Supp. 3d at 1199 (quoting *Brown v. Google LLC*, 685 F.Supp.3d at 938). Nor

does Defendant's reliance on *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) compel a different result. There, the court found ***text messages*** were not confidential because the plaintiff admitted knowing her texts would be recorded. *Id.* Contrastingly, here the Complaint is replete with allegations Plaintiff did not consent to Defendant's unlawful conduct. Compl. ¶¶ 4–6, 29, 31, 33, 67–68, 70, 111, 123, 137–38.

At a minimum, this Court should decline to decide this issue at the pleadings stage. *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *18 (N.D. Cal. Oct. 10, 2025) ("The Court declines to decide this issue in the pleadings stage.").

## VII. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

Defendant argues Plaintiff has not alleged it "violated any 'accepted community norm'" such that Plaintiff has no reasonable expectation of privacy. MTD at 21. Not so.

To state a claim for invasion of privacy under the California Constitution, a plaintiff need only allege (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *8 (denying a motion to dismiss the plaintiff's invasion of privacy claim under similar facts) (cleaned up); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted).

***First***, Plaintiff alleges a legally protected privacy interest in her financial information, and actions taken within her private student loan portal. Compl. ¶¶ 3–4, 6–8, 20–30, 67–81, 142 ("The highly sensitive and personal information of Plaintiff . . . consists of private and confidential facts and information regarding Plaintiff's . . . financial services that were never intended to be shared beyond private communications on the Website and the consideration of finance professionals"). The weight of the authority supports Plaintiff's position. *See*, *e.g.*, *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944–45 (N.D. Cal. 2024) ("sensitive financial information [falls into the category of legally protected information]"); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 (S.D. Cal. Nov. 23, 2009) ("There can be little question that [p]laintiff has a legally protected privacy interest in his private financial information."); *Valley Bank of Nev. v. Superior Court*, 15 Cal.3d 652,

656 (1975) ("[W]e may safely assume that the right of privacy extends to one's confidential financial affairs").

That interest is reinforced by the GLBA and CalFIPA, which make "nonpublic personal information" confidential as a matter of law. 16 C.F.R. § 313.3; Cal. Fin. Code § 4052.5; Compl. ¶¶ 20–30. Indeed, CalFIPA expressly declares the California Legislature's intent "to afford persons greater privacy protections than those provided in Public Law 106-102, the federal Gramm-Leach-Bliley Act." Cal. Fin. Code § 4051(b); Compl. ¶ 25 (cleaned up). The statutory privacy interests created by the GLBA and CalFIPA bolster the common-law privacy interest California courts have long recognized in confidential financial affairs.

***Second***, Plaintiff's expectation in the privacy of her financial information is reasonable. Indeed, Plaintiff's privacy interest arises from Defendant's disclosures of sensitive and confidential financial information and PII including: (1) her identity, (2) IP address, (3) device information, (4) browser fingerprint, (5) status as having student loan debt, and (6) nonpublic URLs with information about her student loans. *See* Compl. ¶¶ 3–4, 6–8, 20–30, 67–81, 142, Figs. 1–4. This is precisely the type of information people possess a reasonable expectation of privacy over, which is bolstered by its protected status under both the GLBA and CalFIPA. *See* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential); *see also* Cal. Fin. Code § 4052 *et seq.* (protecting from disclosure nonpublic personal information to third parties without explicit prior consent of the consumer); Compl. ¶¶ 20–30, 67–81.

Plaintiff's expectations arose in a context where (i) she was required by Defendant to use the Website to manage her loans; (ii) she was interacting within a logged-in, authenticated financial account portal; and (iii) her communications with Defendant concerned nonpublic personal financial information specifically protected by federal and state statute. Compl. ¶¶ 6–7, 20–30, 67–81.

***Third***, Defendant's disclosure constituted an "egregious breach of privacy." Determining what is highly offensive to a reasonable person requires a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion . . . social norms render the intrusion inoffensive." *In re Facebook*, 956 F.3d at 606 ("The ultimate question of whether

[defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith I*, 2025 WL 1085169, at *3 (same). A true holistic consideration in this case should lead to the determination that Defendant's interception and disclosure of Plaintiff's data constitutes an egregious breach. Here, contemporary "social norms" are likely to render the disclosure of student loan status, for instance, as being highly offensive. *See* Compl. ¶ 3 ("[M]any student loan borrowers experience feelings of stress, anxiety, and shame related to their student loan debt.").

*Zocco v. NelNet, Inc.* is instructive. There, the court reasoned:

> Plaintiffs allege that Nelnet shared "private and confidential facts and information regarding Plaintiff[s'] ... financial services," and PII that Plaintiffs never intended to be shared "beyond private communications on the Website and the consideration of finance professionals." According to the complaint, the "information shared by [Nelnet] allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving." "For example, when a consumer logs into their Nelnet account and makes a payment or opts for repayment options, [Nelnet] discloses such information to Google through its use of Google Analytics." Against this backdrop, Plaintiffs have identified sufficient facts to survive a motion to dismiss.

*Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *8 (internal citations omitted). This Court should do the same.

**<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff respectfully seeks leave to amend the Complaint.

Dated: August 24, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*